UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 20-cr-20408

v.

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

RONITO CAURICE GOMEZ,

Defendant.

_____/

## AMENDED[1] OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR APPEAL AND REVOCATION OF DETENTION ORDER [#30]

### I. INTRODUCTION

On June 6, 2020, Defendant Ronito Caurice Gomez ("Defendant") was charged in a criminal complaint for being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g), and for Possession with the Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). ECF No. 1, PageID.1. On June 17, 2020, a detention hearing was held before Magistrate Judge Anthony P. Patti. ECF No. 6. Magistrate Judge Patti concluded that the Government established with clear and convincing evidence that there is no condition or combination of conditions of release that will reasonably assure the safety of other persons and the

---

[1] This Opinion and Order is amended only as to the Court's conclusion that Defendant's Motion is denied with prejudice.

1

community, as well as a preponderance of evidence that no condition or combination of conditions will reasonably assure Defendant's appearance.  *Id.* at PageID.13. Defendant was therefore detained pending trial.  *Id.* at PageID.14.

Presently before the Court is Defendant's Emergency Motion for Appeal and Revocation of Detention Order, filed on November 17, 2020.  ECF No. 30.  The Government filed a Response and a copy of Defendant's medical records on November 24, 2020.  ECF Nos. 35, 36.  A hearing on this matter was scheduled for December 1, 2020 and continued to December 4, 2020.  For the reasons that follow, the Court will **DENY** Defendant's Emergency Motion for Appeal and Revocation of Detention Order [#30].  The Court will also modify Defendant's Order of Detention consistent with this present Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Charges

On June 4, 2020, Detroit Police Department ("DPD") officers executed a search warrant at a residence on South Patricia Street in Detroit, Michigan.  ECF No. 1, PageID.2.  The warrant authorized the seizure of controlled substances and the arrest of Defendant, who was wanted on a probation violation for fleeing and eluding a police officer.  *Id.* at PageID.3.  As DPD officers approached the residence, they observed Defendant close and lock the front door.  *Id.*  While executing the search warrant, DPD officers encountered three adult individuals, including Defendant, and

two minor children.  *Id.*  DPD officers located Defendant on the second floor of the home, where they also observed an access to a crawl space.  *Id.*  They then took Defendant into custody.  ECF No. 35, PageID.119.  DPD officers then recovered a scale, controlled substances, including heroin and crack cocaine, multiple rounds of loose ammunition, and two loaded handguns.  *Id.*; ECF No. 17, PageID.55–56.

Defendant appeared before Magistrate Judge Patti for his initial appearance on June 15, 2020 and was ordered detained pending trial following his detention hearing two days later.  *See* ECF No. 6.  On September 8, 2020, Defendant was named in a two-count Information, charging him Felon in Possession of a Firearm and Possession with the Intent to Distribute Controlled Substances.  ECF No. 17.  Defendant entered a guilty plea to these two charges on October 21, 2020.  *See* ECF No. 35, PageID.120.  The Court subsequently granted Defendant's request for an expedited sentencing due to his alleged serious medical conditions and inadequate access to medical treatment.  ECF No. 30, PageID.86.  Accordingly, Defendant's sentencing is scheduled for January 29, 2021.  ECF No. 27.

### B.  Defendant's Background

Defendant is thirty years old and a lifelong resident of the Eastern District of Michigan.  Defendant has resided at a home in Detroit, Michigan, which his mother owns, since June 2010.  Defendant remains in regular contact with his immediate family, including his mother, father, and three siblings.  Defendant also remains in

3

regular contact with his six children, all of which live with their mothers in the Eastern District of Michigan.  He financially supports one child through court-ordered child support and also helps financially support his other five children when he can.  In his present Motion, Defendant explains that he recently married Shaniah Scott, who is expecting their child in January.  ECF No. 30, PageID.90.  He asserts that if the Court were to grant his present Motion, he would live with Ms. Scott at her home in Taylor, Michigan.

Defendant explains that he was last employed at Kevin's All Season Lawn & Landscaping LLC in Detroit, Michigan before he was laid off due to the COVID-19 pandemic.  He reports that he previously worked for Triple City Collision in 2018, but he had to leave this job due to injuries from a shooting incident.  Pretrial Services was unable to verify this information with Defendant's mother at the time of its report.  Defendant's mother indicated that Defendant worked with his uncle on side projects prior to his arrest.

Defendant claims that he is in good physical health, with the exception of asthma, "some lingering issues" after he was shot in 2018, and his current kidney stones.  He does not report any history of mental health illness.  Defendant reports that he was prescribed Xanax, however, after he was shot in 2018.  Defendant asserts that he smokes marijuana daily and that he has a medical marijuana card.  He does

not report any other illegal drug or alcohol use.  Defendant's mother confirmed that he does not drink alcohol.

Defendant has a history of several arrests, criminal convictions, and multiple probation violations, beginning at the age of thirteen.  Some of his convictions include those for assault and firearm violations, as well as two separate felony fleeing from police convictions.  Defendant was on probation when he was arrested for the instant offenses.

### C. Detention Hearing

Prior to his detention hearing, Pretrial Services recommended that Defendant be detained pending trial.  On June 17, 2020, Defendant appeared before Magistrate Judge Patti.  Magistrate Judge Patti found that detention was warranted.  ECF No. 6.

At the detention hearing, Magistrate Judge Patti emphasized the circumstances surrounding the serious nature of the instant offenses, including Defendant's actions in closing and locking the door and the quantity of controlled substances obtained in the search, as well as Defendant's criminal history.  In his order of detention, Magistrate Judge Patti highlighted several findings in support of detention, including: (1) Defendant closed and locked the door of the residence about to be searched by DPD officers, requiring the officers to break the door in; (2) Defendant hid contraband in an attic area as DPD officers surrounded the residence; (3) DPD officers discovered two loaded handguns, a distribution amount of heroin,

as well as cocaine, marijuana, and $10,000 in cash; (4) Defendant has fled from the police on multiple occasions; (5) Defendant's criminal history; (6) Defendant was on probation at the time of the instant offense; (7) Defendant is known to be affiliated with a gang; and (8) Defendant's prior criminal history includes violence, fleeing, and gun possession.  ECF No. 6, PageID.14.

While Magistrate Judge Patti acknowledged Defendant's positive characteristics, including his long-standing familial ties to the community, he found that Defendant was unable to overcome the presumption of detention pending sentencing under 18 U.S.C. § 3142(e)(3).  He alternatively found that the Government had established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.  *Id.* at PageID.13.  He also determined that the Government had established by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance.  *Id.*  He thus ordered Defendant to be detained pending trial.  *Id.* at PageID.14.

### III. LEGAL STANDARD

The parties agree that because Defendant has been convicted of, and is awaiting sentencing for, an offense described in 18 U.S.C. § 3142(f)(1)(A)–(C)— i.e., an offense under the Controlled Substances Act that carries a term of imprisonment of at least 10 years—Section 3143(a)(2) applies.  *See* 18 U.S.C.

3143(a)(2) (cross-referencing offenses listed under 18 U.S.C. § 3142(f)(1)(A)–(C)).

Under § 3143(a)(2), the Court must order a defendant detained pending sentencing

unless: (1) the Court "finds there is a substantial likelihood that a motion for acquittal

or new trial will be granted," 18 U.S.C. § 3143(a)(2)(A)(i), or (2) "the Government

has recommended that no sentence of imprisonment be imposed," 18 U.S.C. §

3143(a)(2)(A)(ii).  If a defendant can meet either of those prongs, a defendant must

then satisfy the remaining requirement of § 3143(a)(2)(B) to be eligible for release.

Section 3143(a)(2)(B) requires "clear and convincing evidence that the person is not

likely to flee or pose a danger to any other person or the community." 18 U.S.C.

§ 3143(a)(2)(B).

        In his present Motion, Defendant does not argue that he satisfies the exception

to mandatory detention under § 1343.  Rather, he says the Court should release him

under 18 U.S.C. § 1345(c).  ECF No. 30, PageID.89.  Section 3145(c) permits a

judicial officer to release a defendant subject to detention under § 3143(a)(2) if he

or she "meets the conditions of release set forth in section 3143(a)(1)" and "if it is

clearly shown that there are exceptional reasons why such person's detention would

not be appropriate." 18 U.S.C. § 3145(c).  In order to satisfy 18 U.S.C. § 3143(a)(1),

the defendant must show by "clear and convincing evidence" that he or she is "not

likely to flee or pose a danger to the safety of any other person or the community if

released" under conditions set forth by the Court.   18 U.S.C. § 3143(a)(1).

Accordingly, Defendant must demonstrate both (1) clear and convincing evidence that he is not a flight risk or a danger to others and (2) an exceptional reason why his detention is inappropriate. *See United States v. Christman*, 596 F.3d 870, 870 (6th Cir. 2010) (Mem.).

## IV. ANALYSIS

### A. Defendant's Arguments Pursuant to 18 U.S.C. § 3145

In his present Motion, Defendant argues that he satisfies each of the requirements for release under § 3145(c), and he therefore requests that the Court release him pending sentencing under a combination of conditions, including electronic monitoring and home confinement at his wife's residence in Taylor, Michigan.

#### 1. Danger to Community

Defendant argues that his criminal record does not properly reflect his risk to the community. ECF No. 30, PageID.92. He emphasizes that he has "always been granted bond" for his several past felony convictions. *Id.* at PageID.93. Defendant also speaks specifically to his convictions for "fleeing and eluding," emphasizing that such convictions speak only to his fear of police. *Id.* Moreover, Defendant explains that his "remand status" on two pending probation matters arise from his failure to appear due to being in federal custody. *Id.* He also argues that his post-arrest conduct "speaks to a change of heart noted by the friends and family who have

provided letters of support." *Id.* If released, Defendant says he would live with his wife, who is expecting the birth of their son in early January. *Id.* at PageID.93–94.

In its Response, the Government emphasizes that Defendant committed serious offenses in this matter, while he was on probation, and has a lengthy criminal record that involves convictions for violence, fleeing from and eluding the police, and failing to abide by the law under court supervision. ECF No. 35, PageID.123. Moreover, the Government cites to Pretrial Services' recommendation that Defendant should be detained. *Id.* Indeed, Pretrial Services pointed to (1) the nature of the instant offense; (2) Defendant's substance abuse history; (3) Defendant's history of violent behavior; (4) Defendant's probation and parole status and compliance; (5) Defendant's criminal activity while under supervision; (6) Defendant's gang involvement; (7) Defendant's history involving violence/domestic violence; and (8) Defendant's history of weapon use in concluding that no condition or combination of conditions can reasonably assure the safety of the community.

Upon careful review of Defendant's criminal history, the Court takes notice of Defendant's convictions for firearm offenses, felony assault, fleeing and eluding the police. While the Court appreciates Defendant's explanation for his convictions for "fleeing and eluding," the Court cannot ignore his several other convictions, which include violence and gun possession. The Court also emphasizes that Defendant was on probation at the time he committed the instant offenses, one of

9

which is punishable by a term of imprisonment of ten or more years under the Controlled Substances Act.

Moreover, the full extent of the circumstances surrounding the two instant offenses is unquestionably serious. DPD officers obtained a substantial amount of concerning physical evidence, including loaded firearms and significant quantities of various drugs, such as heroine and cocaine, and related distribution materials. When Defendant saw DPD officers approaching the residence, he locked the door and fled upstairs to hide the firearms and drugs in a crawl space. These facts demonstrate Defendant's dangerousness to the community. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence.... To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." (collecting cases)). For all the reasons set forth above, the Court finds that Defendant would pose a danger to the community if released pending sentencing. Furthermore, the Court weighs strongly the recommendation from Pretrial Services, which, as indicated above, concluded that there was no condition or combination of conditions that could reasonably assure the safety of the community.

Accordingly, the Court finds that Defendant does not establish by clear and convincing evidence that he is not a danger to the community.

### 2.  Flight Risk

Defendant also argues that his risk of flight is "profoundly reduced by the fact that he has pled guilty."  ECF No. 30, PageID.92.  He asserts that he understands that flight would result in additional charges and convictions which could be consecutive to his forthcoming sentence in this matter.  *Id.*  Moreover, Defendant emphasizes his communal and familial ties to the area as additional evidence that he is not a flight risk.

The Government argues that Defendant's criminal history demonstrates that there is no set of conditions that will ensure his appearance.  Indeed, the Court takes notice of Defendant's history of failing to comply with law enforcement authority.  Defendant has repeatedly reoffended while on parole or probation periods for his prior offenses, including for the two instant offenses.  While the Court denotes Defendant's aforementioned communal and familial ties to the area, the Court takes seriously Defendant's pattern of fleeing and eluding from law enforcement.  This pattern causes the Court to doubt whether conditions of pretrial release would be successful.  Additionally, the Court denotes Pretrial Services' recommendation, which determined that Defendant poses a risk of nonappearance for six separate reasons.

In sum, the Court finds that Defendant does not establish by clear and convincing evidence that he is not a flight risk.  Accordingly, the Court concludes

that Defendant is not entitled to release under § 3145(c).   *See* 18 U.S.C. §

1345(c), 1343(a)(1).

### 3.  COVID-19, Defendant's Medical Needs, and Exceptional Circumstances

Defendant contends that the COVID-19 pandemic, coupled with his health

conditions, constitute an exceptional reason for why his detention pending

sentencing is not appropriate.  The Court observes that Congress has not defined

what an "exceptional reason" is under § 3145(c).

### i.    COVID-19

Defendant argues that his asthma, kidney issues, heart and lung issues,

obesity, race, and sex put him at a greater risk of contracting COVID-19.[2]  ECF No.

30, PageID.91.

Defendant's medical records confirm, and the Government does not contest,

that Defendant has asthma.  ECF No. 36, PageID.156, 191.  The Government asserts

in its Response that Defendant is presently receiving appropriate medical care for

his asthma.  ECF No. 35, PageID.132.  The Court takes notice of Defendant's

prescription for an Albuterol Inhaler for his condition as of November 11, 2020.

---

[2] The Court denotes that Defendant only elaborates on his asthma and kidney conditions in his Motion.  The CDC's current list of high risk underlying medical conditions does not reference kidney stones.  The Court will therefore address Defendant's concern for his kidney stones in the next section.

ECF No. 36, PageID.156.  Upon review of his medical records, Defendant has not complained of his asthma condition since receiving this prescription.

The Court denotes that Defendant's asthma was not addressed at his detention hearing before Magistrate Judge Patti.  Nevertheless, the Court recognizes the gravity of the coronavirus pandemic and the serious risks posed to incarcerated individuals, especially those who are more vulnerable because of their underlying health conditions.  Indeed, Defendant's asthma, if it is proven to be "moderate to severe," places him in the Center for Disease Control and Prevention's ("CDC") higher risk category for COVID-19 complications.[3]  *People With Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Nov. 2, 2020).  The Court also takes notice of Defendant's obesity, which may also place him at an increased risk for illness from COVID-19.  While Defendant does not elaborate on his obesity or cite to medical records for this, the Government does.  ECF No. 35, PageID.133 (citing ECF No. 36, PageID.174).

---

[3] The Court denotes that there is no indication from Defendant's medical records that he displays the symptoms associated with moderate or severe asthma.

At the hearing, the Government informed the Court that since the time of briefing, FDC Milan now has twelve positive cases in Defendant's housing unit. The Government emphasized that the facility has instituted mass testing for the incarcerated individuals, including Defendant, within the unit, along with several other safety precautions. At the time of the hearing, Defendant's test results had not yet come back.

While such risks of contracting COVID-19 may present a compelling reason for bond, the Court "must balance [Defendant's] risk of infection while confined against the right of the community to be free from danger if [he] is released and fails to abide by conditions set out by the Court." *United States v. Wood*, No. 19-20216-6, 2020 U.S. Dist. LEXIS 79472, at *12–13 (E.D. Mich. May 6, 2020). Upon review of Defendant's record, and in light of the analysis set forth in the preceding section, that balance does not warrant revocation of the detention order at this juncture. Moreover, the Court, upon review of Defendant's medical records, takes notice that he has access to appropriate medical care for his asthma.

In sum, while the Court is concerned with the special risks that COVID-19 poses to incarcerated individuals like Defendant, the Court concludes that the evidence establishes by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of other persons and the community should Defendant be released on bond pending

sentencing.  Accordingly, Defendant's concerns for possible future illness at FDC Milan does not constitute an exceptional reason for release under 18 U.S.C. § 3145(c).

### ii.    Kidney Stones

In addition to his concerns for contracting COVID-19, Defendant argues that his serious kidney condition constitutes an exceptional reason for his release.  ECF No. 30, PageID.91.  He asserts that as of late August, he began to experience extreme flan pain, nausea, sweating, fever, difficulty urinating, and blood in his urine.  *Id.* Defendant contends that despite his multiple complaints, he has received "next to no medical care" at both the Livingston County Jail and FDC Milan, where he is currently awaiting sentencing.  *Id.*  Defendant emphasizes that he was not taken to a local hospital until August 25, 2020, when the Government intervened.  He explains that on or about November 13, 2020, he was again transported to a medical facility, where he was advised that he had 16 kidney stones and that he would require surgery to remove them.  *Id.* at PageID.91–92.  According to Defendant, he was also informed that one of the stones was blocking the ureter between his kidney and bladder, and if the stone was not removed, "he could suffer permanent bladder and kidney stones." *Id.* at PageID.92.

The Government claims that Defendant makes these claims "with no supporting documentation that surgery would be available, or even immediately

necessary, if he were not detained." ECF No. 35, PageID.134. The Government further emphasizes that Defendant is receiving "frequent treatment for the condition." *Id.* Moreover, the Government points to a notation from Allison Williams, DNP, FNP-BC on November 16, 2020, which indicates that there was a "non-obstructing intrarenal calculi within the kidneys." ECF No. 36, PageID.182. At the hearing, the Government separately argued that Defendant is also receiving adequate treatment as to his hyperparathyroidism. The Government cited to Defendant's medical records to establish that Defendant's calcium levels are being properly monitored. ECF No. 36, PageID.191. The Court denotes that Defendant is currently taking medication for his kidney condition, including Toradol, an anti-inflammatory used for intense pain typically administrated just prior to, or after, surgery, and 800 mg of Ibuprofen three times a day. *See id.* at PageID.154.

The Court takes seriously Defendant's concerns for his current kidney condition while he awaits sentencing for the instant offenses. Indeed, at the hearing, Defendant informed the Court that he is having difficulty urinating and sleeping. The medical records, including those provided by Defendant in his Motion and Reply and by the Government under seal, demonstrate Defendant's continuous complaints of and treatment for his condition. The Court first looks at the attached medical records to Defendant's Motion. ECF No. 30, PageID.105–111. These records from Detroit Medical Center demonstrate that Defendant's kidney condition

16

dates back to at least September 9, 2019.  On this date, Defendant was prescribed three medications, including Tamsulosin, Naproxen, and Acetaminophen.

The Court next looks to the attached medical records to Defendant's Reply. ECF No. 37-1.  These records are from Livingston County Jail, where Defendant was detained prior to FDC Milan.  Dr. Galejs denoted on November 3, 2020 that Defendant had a "large obstructing ureteral stone" with a "very small chance of passage." *Id.* at PageID.216.  Importantly, Dr. Galejs also indicated "surgery needed ASAP … [m]y office to work on scheduling." *Id.*  Defendant was scheduled to be seen again on November 10, 2020. *Id.*  Upon review of Defendant's medical records, however, it appears Defendant was transferred to FDC Milan before this next appointment.  ECF No. 36, PageID.168.  The Court also takes notice that on two prior medical visits while at the Livingston County Jail, on September 14 and 23, 2020, doctors indicated that Defendant *may* need additional medication or surgery. ECF No. 37-1, PageID.219, 221.  These notations demonstrate that between September and November 3, 2020, when Dr. Galejs indicated Defendant "needed" surgery "ASAP," Defendant's condition was worsening.

The Court lastly looks to Defendant's medical records which the Government filed under seal.  ECF No. 36.  Here, the Court takes notice that on November 23, 2020, Defendant indicated that his "excruciating" pain was a "10/10," and that he had been noticing blood in his urine. *Id.* at PageID.141.  Moreover, Allison

Williams, DNP, FNP-BC, who evaluated Defendant, recorded that a "CT examination can provide more detail." *Id.* at PageID.144. Defendant has now been prescribed medication, including 60 mg of Toradol. *Id.* at PageID.143. The Court is most concerned with Defendant's other conditions, including his blood pressure, which may be related to his kidney stones. Indeed, a review of Defendant's vitals demonstrate that on November 4, 2020, his blood pressure was 113/79, on November 16, 2020 it was 140/89, and by November 23, 2020 it was 130/89. *Id.* at PageID.184–85.

Importantly, however, Defendant does not make any claim in his Motion that he will be able to obtain adequate medical care for his condition should he be released awaiting sentencing. Defendant instead argues generally that he can live with his wife, who is expected to give birth in early January, at her home in Taylor, Michigan. At the hearing, Defendant explained that he would receive medical care from Detroit Mercy Hospital should he be released; he was unable to provide the Court with a name of a primary care physician. The Court finds this lack of information problematic, especially in light of Defendant's lack of verifiable employment. *See, e.g.*, *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999) ("As to proper medical attention, defendant has available the medical facilities and services of the Bureau of Prisons. Considering defendant's financial condition and potential earning capacity, it is doubtful that he could secure superior

treatment if released.").  In short, based on the present factual record, the Court questions how Defendant's release can improve his present medical condition.

Accordingly, even if the Court determined that Defendant established an exceptional reason showing why his continued detention would be inappropriate, either for his presented COVID-19 or kidney stones concerns, the Court would nevertheless deny his Motion because Defendant has failed to establish by clear and convincing evidence that he is not a flight risk nor a danger to the community.

## B. Defendant's Challenge to Present Condition of Confinement at FDC Milan

Finally, the Court will turn to Defendant's Eighth Amendment claim. Defendant argues that his continued detainment at FDC Milan, where his serious medical conditions are purportedly not being properly treated, constitutes cruel and unusual punishment in violation of the Eighth Amendment.  ECF No. 30, PageID.90, 92.

Generally, federal prisoners can challenge their conditions of confinement pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971), also known as a Bivens action.  The Sixth Circuit has not squarely addressed whether federal pre-trial detainees may challenge their conditions of confinement through a motion in their criminal cases when they have not yet brought a separate civil suit.  As a general rule, a defendant must file a separate civil action to challenge his conditions of confinement.  *See, e.g.*, *United*

*States v. Loera*, No. CR 13-1876 JB, 2017 U.S. Dist. LEXIS 96221, at *81 (D.N.M. June 22, 2017) (collecting cases).  The primary exception to this general rule is when a condition of confinement interferes with a pretrial detainee's access to counsel in a criminal case.  *See Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995).

The Court will follow its sister circuits in applying this general rule in resolving the present matter, especially since Defendant's challenged condition of confinement does not interfere with his access to counsel.  Nevertheless, the Court takes seriously Defendant's concerning allegations of his medical treatment at FDC Milan as he awaits sentencing in January 2021.  As explained *supra*, Defendant's medical records make clear that he requires surgery for his condition.  Under 18 U.S.C. § 3553(a), one of the factors the Court must consider in sentencing Defendant is "the need for the sentence imposed … to provide the defendant with needed … medical care[.]"  As another district court has explained, "[t]his requires an accurate assessment of what the Defendant's current medical condition is, what treatment he needs, and whether and where he can receive such treatment while incarcerated." *United States v. Ramirez-Robles*, No. 06-cr-00485-MSK, 2007 U.S. Dist. LEXIS 50443, at *6 (D. Colo. Jul. 11, 2007).

Accordingly, pursuant to both 18 U.S.C. § 3145 and 18 U.S.C. § 3553(a), the Court concludes that it is within its authority to direct that Defendant be provided with a medical evaluation while awaiting sentencing.

The Court acknowledges that such an evaluation may not entirely resolve Defendant's presented Eighth Amendment argument.  ECF No. 30, PageID.91–92. The Eighth Amendment prohibits prison officials from "'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs."  *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment.  *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).  The Sixth Circuit has made clear that, under the Fourteenth Amendment, pretrial detainees are "entitled to the same Eighth Amendment rights as other inmates." *Richko v. Wane Cty., Mich.*, 819 F.3d 907, 917 (6th Cir. 2016) (citation omitted).

In sum, the Court will modify Defendant's present Order of Detention to reflect its concerns for Defendant's conditions of confinement at FDC Milan.

## V. CONCLUSION

Accordingly, for the reasons articulated above, **IT IS ORDERED** that Defendant's Emergency Motion for Appeal and Revocation of Detention Order [#30] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Order of Detention be modified consistent with this Order. Specifically, the Court **HEREBY ORDERS**:

(1) <u>Not later than December 11, 2020</u>, Defendant's health condition (specifically, his kidney condition) shall be evaluated by Bureau of Prisons medical staff that can speak to Defendant's specific condition at a facility deemed suitable by the Federal Bureau of Prisons.

(2) The professional(s) evaluating Defendant shall prepare a written report assessing: (a) the kidney condition, or any other medical condition from which Defendant suffers; (b) what treatment is necessary and required; (c) whether the Bureau of Prisons can provide necessary treatment before Defendant's sentencing; and (d) if so, where and how it will provide such treatment.

(3) Unless otherwise ordered by the Court, the aforementioned evaluation shall be completed and a written report submitted to the Court and to counsel <u>no later than December 16, 2020</u>. After receipt of such report, defense counsel is free to file any motions he deems appropriate.

**IT IS SO ORDERED.**

Dated:        December 7, 2020

                                                                s/Gershwin A. Drain
                                                                HON. GERSHWIN A. DRAIN
                                                                United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 7, 2020, by electronic and/or ordinary mail.
                    /s/ Teresa McGovern
                    Case Manager