UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

RONITO CAURICE GOMEZ,

Defendant.

Case No. 20-cr-20408

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

**OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY
MOTION FOR ORDER TO SHOW CAUSE [#30]**

**I. INTRODUCTION**

On June 6, 2020, Defendant Ronito Caurice Gomez ("Defendant") was charged in a criminal complaint for being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g), and for Possession with the Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). ECF No. 1, PageID.1. On October 21, 2020, Defendant entered a guilty plea for both counts. Defendant was sentenced to 84 months, per count, concurrent to each count on January 29, 2021. *Id.* at PageID.14.

Presently before the Court is Defendant's Emergency Motion for Order to Show Cause the Bureau of Prisons for Failure to Comply with the Court's Order for Medical Treatment, filed on April 5, 2021. ECF No. 70. The Government filed a

Response and a copy of Defendant's medical records under seal on April 14, 2021. ECF Nos. 72, 73. A hearing on this matter was held on April 23, 2021. For the reasons that follow, the Court will **DENY** Defendant's Emergency Motion for Order to Show Cause [#70].

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2020, Detroit Police Department ("DPD") officers executed a search warrant at a residence on South Patricia Street in Detroit, Michigan. ECF No. 1, PageID.2. The warrant authorized the seizure of controlled substances and the arrest of Defendant, who was wanted on a probation violation for fleeing and eluding a police officer. *Id.* at PageID.3. As DPD officers approached the residence, they observed Defendant close and lock the front door. *Id.* While executing the search warrant, DPD officers encountered three adult individuals, including Defendant, and two minor children. *Id.* DPD officers located Defendant on the second floor of the home, where they also observed an access to a crawl space. *Id.* They then took Defendant into custody. ECF No. 35, PageID.119. DPD officers then recovered a scale, controlled substances, including heroin and crack cocaine, multiple rounds of loose ammunition, and two loaded handguns. *Id.*; ECF No. 17, PageID.55–56.

Defendant appeared before Magistrate Judge Patti for his initial appearance on June 15, 2020 and was ordered detained pending trial following his detention hearing two days later. *See* ECF No. 6. On September 8, 2020, Defendant was

2

named in a two-count Information, charging him Felon in Possession of a Firearm and Possession with the Intent to Distribute Controlled Substances. ECF No. 17. Defendant entered a guilty plea to these two charges on October 21, 2020. *See* ECF No. 35, PageID.120.

On December 7, 2020, the Court denied Defendant's Emergency Motion for Appeal and Revocation of Detention Order. ECF No. 40. In its Opinion and Order, the Court concluded that even if Defendant established an exceptional reason for why his continued detention would be inappropriate, either for his COVID-19 or kidney stones concerns, there was still no condition or combination of conditions of release that would reasonably assure the safety of other persons and the community if he was released on bond. *Id.* at PageID.266. Moreover, the Court opined that a medical evaluation shall be conducted for Defendant while he awaited sentencing in light of his ongoing kidney condition. *Id.* at PageID.267. Thereafter, the parties engaged in extensive motion practice surrounding the Bureau of Prisons' submission of Defendant's medical evaluation. In its December 23, 2020 Opinion and Order, the Court emphasized that time remained to be of the essence for Defendant's ongoing medical condition. ECF No. 52, PageID.525.

On January 4, 2021, the Government submitted a written report prepared by FCI Milan's Assistant Health Services Administrator. ECF No. 57. In the report, P. Duncan, RN, AHSA explained that the 9mm kidney stone, which had been

previously reported and raised the possibility of a need for surgical intervention, was not observed to be present. *Id.* at PageID.542. Moreover, the report included a description of Defendant's then-current treatment plan. *Id.* at PageID.543. The report concluded by noting that Defendant's condition is "stable." *Id.*

As indicated *supra*, Defendant was sentenced before this Court on January 29, 2021. ECF No. 65. He now moves the Court for an Order to Show Cause the Bureau of Prisons for its alleged failure to comply with the Court's prior Order concerning his medical condition. ECF No. 70. Specifically, Defendant requests the Court "enter an Order to Dr. M. Samaan, Milan Prison Clinical Director, to appear before this Court and Show Cause why he should not be held in contempt for ignoring the Court's directive and demonstrating deliberate indifference to Defendant's serious medical condition." *Id.* at PageID.776. In its Response, the Government argues that there is no basis for such an Order. ECF No. 72. The Government emphasizes that Defendant has continued to receive medical treatment and evaluations related to his kidney condition throughout the last four months. *Id.* at PageID.785, 788. Defendant did not file a Reply.

### III. LEGAL STANDARD

Courts have an inherent contempt authority "as a power necessary to the exercise of all others." *Int'l Union, United Mine Workers of Amer. v. Bagwell,* 512 U.S. 821, 831 (1994) (internal quotation marks and citation omitted). A litigant may

4

be held in contempt if the moving party demonstrates "by clear and convincing evidence" that his adversary violated an order of the court "requiring [the adversary] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (citation omitted). The order in question must be "definite and specific." *United States v. Conces*, 507 F.3d 1028, 1041–42 (6th Cir. 2007); *see also Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550–51 (6th Cir. 2006). If there is ambiguity, it must be resolved in favor of the non-movant. *Liberte Capital Grp., 462 F.3d at 551*.

If the moving party establishes such a prima facie case for contempt, the burden shifts to the non-movant. *United States v. Rylander*, 460 U.S. 752, 757 (1983). The non-movant then must show a present inability to comply with the court's order. *Id.* This shifted burden requires the non-movant to show "categorically and in detail" why it was unable to comply with the order in question. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). In making this determination, the test is whether the non-movant "took all reasonable steps within [his] power to comply with the court's order." *Conces*, 507 F.3d at 1043 (alteration in original) (citation omitted).

### IV. ANALYSIS

On December 23, 2020, after the Government's two separate requests for an extension of time, *see* ECF Nos. 41, 48, the Court ordered the following directives:[1]

(1) <u>Not later than December 30, 2020</u>, Defendant's health condition (specifically, his kidney condition) shall be evaluated by Bureau of Prisons medical staff that can speak to Defendant's specific condition at a facility deemed suitable by the Federal Bureau of Prisons.

(2) The professional(s) evaluating Defendant shall prepare a written report assessing: (a) the kidney condition, or any other medical condition from which Defendant suffers; (b) what treatment is necessary and required; (c) whether the Bureau of Prisons can provide necessary treatment before Defendant's sentencing; and (d) if so, where and how it will provide such treatment.

(3) Unless otherwise ordered by the Court, the aforementioned evaluation shall be completed and a written report submitted to the Court and to counsel <u>no later than January 4, 2021</u>. After receipt of such report, defense counsel is free to file any motions he deems appropriate.

---

[1] The Court first ordered these directives in its December 7, 2020 Opinion and Order Denying Defendant's Emergency Motion for Appeal and Revocation of Detention. ECF No. 40, PageID.268. While the Government's deadlines were modified in the subsequent Order, ECF No. 52, the substance of the directives did not change.

ECF No. 52, PageID.527–28.  As indicated above, the Government issued a Notice and Update Regarding Defendant's Health Status on January 4, 2021.  ECF Nos. 56, 57.  The written report of Defendant's condition was prepared by Milan's Assistant Health Services Administrator.  ECF No. 57.  Notably, Defendant did not submit a Response or any filing following this report until his present filing.

In his Motion, Defendant asserts that Dr. M. Samaan, Milan Prison Clinical Director, must be held in contempt for ignoring the Court's directive and demonstrating deliberate indifference to his kidney condition.  ECF No. 70, PageID.776.  He asserts that "no further imaging to confirm the existence or lack of kidney stone presence" has occurred while he remains incarcerated at Milan.  ECF No. 70-1, PageID.779.  Moreover, he emphasizes that he "has experienced a very serious flare-up of his flank pain, inability to urinate, painful urination when he can and nausea." *Id.* at PageID.780.  At the hearing, Defendant emphasized his difficulty urinating and denoted that he has been noticing blood in his urine.  He also confirmed that he has been taking pain medication for his condition.  In his Motion, Defendant explains that he has received no further medical care since his December 30, 2020 visit, including any CT, MRI, or ultrasound imaging tests.  *Id.* at PageID.780–81.

The Government contests its alleged lack of compliance with the Court's Order, arguing that it was only directed to evaluate Defendant and issue a written report, which it did on December 30, 2020 and January 4, 2021, respectively.  ECF

No. 72, PageID.787. Moreover, the Government asserts that Defendant has continued to receive medical treatment and evaluation related to his kidney condition. *Id.* at PageID.787–88. Specifically, the Government denotes the following treatments and evaluations since January 2021:

- January 27, 2021 film abdomen examination of left ureteral stone. ECF No. 73, PageID.883;

- February 2, 2021 examination of right side flank pain before Allison Williams, DNP, FNP-BC. *Id.* at PageID.815–17;

- March 9, 2021 treatment for urinary tract infection, as well as chest pain, before Allison Williams, DNP, FNP-BC. *Id.* at PageID.807–09;

- March 10, 2021 examination for additional flank pain before Allison Williams, DNP, FNP-BC. *Id.* at PageID.803–04;

- March 31, 2021 examination for breathing concerns before Clinton White, RN. *Id.* at PageID.793–94;

- April 6, 2021 ultrasound of kidneys, with full report issued on April 13, 2021 from Allison Williams, DNP, FNP-BC.[2] *Id.* at PageID.791–92.

In its Response, the Government emphasizes that the latest ultrasound revealed the presence of "non-obstructing bilateral renal calculi." *Id.* at PageID.791.

Upon careful review of the January 4, 2021 written report, the Court finds that the Government complied with the December 23, 2020 Order. First, Defendant's

---

[2] The Court takes notice that this ultrasound occurred one day after Defendant's present Motion, where he emphasized that he did not receive any ultrasound imaging test. ECF No. 70-1, PageID.781.

kidney condition was evaluated December 30, 2020, thus adhering to the Court's first directive. ECF No. 57, PageID.542. In his written report, P. Duncan RN, AHSA affirmed that Defendant was transported to his offsite medical appointment at IHA Urology on December 30, 2020. *Id.*

Second, the professional evaluating Defendant on this date, P. Duncan RN, AHSA, specifically listed (a) Defendant's present condition: a diagnosis of bilateral nephrolithiasis; and (b) the requisite treatment: monitoring of symptoms; directive for an ultrasound; and a follow-up visit via Zoom; (c) a description of the requisite treatment to be performed at the KUB and labs, which are onsite at Milan, as well as an ultrasound offsite; and (d) a timeline for such treatment. *Id.* at PageID.542–43. These four components adhere to each requirement set forth in the second directive of the Court's December 23, 2020 Order.

Third and finally, the Government filed the aforementioned written report by January 4, 2021. In its Notice's Certificate of Service, which accompanied the written report, the Government affirmed that it submitted the written report to Defendant's counsel. ECF No. 56, PageID.541. The Government therefore complied with the third directive of the Court's December 23, 2020.

In sum, Defendant has not presented clear and convincing evidence that the Government violated a definite and specific court order. *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (citation omitted); *United States v. Conces*,

507 F.3d 1028, 1041–42 (6th Cir. 2007). To the contrary, as explained above, the Government and the Bureau of Prisons complied with each of the three directives of this Court's December 23, 2020 Order. Accordingly, Defendant has not established a prima facie case for contempt. The Court will therefore deny Defendant's present Emergency Motion for Order to Show Cause the Bureau of Prisons.

As a final matter, the Court will address Defendant's argument, which he raised at the hearing, that the Government failed to comply with the "spirit" of this Court's directives, as he has not yet received a CT scan. Defendant emphasizes that the April 13, 2021 report reveals that he is at least experiencing renal collection system dilation with caliectasis in his right kidney, which was not reported from the October 2020 CT scan. He also highlights the report's findings that (1) "[a]n obstructing distal R ureteral calculus would be a possibility" and (2) he needs a further evaluation with a "non contrast CT." *See* ECF No. 73, PageID.791.

While the Court agrees with the Government to the extent that the appropriate legal standard for the present motion addresses the "letter" of a "definite and specific order," as opposed to the "spirit" of such order, the Court remains concerned with Defendant's kidney condition. Specifically, the Court takes seriously the denotation by Allison Williams, DNP, FNP-BC that the "[m]ild right renal collecting system dilatation" is a "new finding" and that "[a]n obstructing distal R ureteral calculus would be a possibility." ECF No. 73, PageID.791. Although Defendant's medical

10

records make clear that he has received continued treatment and evaluations since the Court-ordered December 30, 2020 evaluation,[3] the Court finds that a CT scan, as indicated by Allison Williams, DNP, FNP-BC, can provide further clarification both to Defendant and to this Court on Defendant's current condition.

Notably, the Court observes that a radiology procedure, specifically a "CT Scan, w/o, NOS" has a "target date" of May 11, 2021. *Id.* The Court will accordingly order that Defendant receive a CT scan by this date. Moreover, the Court will order the professional(s) evaluating Defendant in this upcoming CT scan to prepare a written report assessing: (a) the findings and results of such scan; (b) what treatment is necessary and required; and (c) where and how the Bureau of Prisons will provide such treatment. This evaluation shall be completed and a written report must be submitted to the Court and to counsel no later than May 17, 2021.

### V. CONCLUSION

Accordingly, for the reasons articulated above, it is **ORDERED** that

---

[3] Specifically, Defendant's medical records reveal that he has been evaluated for his kidney condition on five separate occasions between January 27, 2021 and the date of this writing. On February 2, 2021, Defendant was given medications to assist with his right side flank pain. ECF No. 73, PageID.816–17. He was then prescribed antibiotics for a urinary tract infection on March 9, 2021. *Id.* at PageID.809. Moreover, Allison Williams, DNP, FNP-BC specifically requested new laboratory tests which were to be reviewed by Dr. M. Samaan. *Id.* at PageID.806. On March 10, 2021, Defendant was prescribed 60 mg of Toradol, a stronger medication, to assist with his continued flank pain. *Id.* at PageID.804.

Defendant's Emergency Motion for Order to Show Cause the Bureau of Prisons for Failure to Comply with the Court's Order for Medical Treatment [#70] is **DENIED**.

 **IT IS FURTHER ORDERED** that:

(1) <u>Not later than May 11, 2021</u>, Defendant shall receive a CT scan as indicated in his recent medical records, ECF No. 73, PageID791.

(2) The professional(s) evaluating Defendant in this upcoming CT scan shall prepare a written report assessing: (a) the findings and results of such scan; (b) what treatment is necessary and required; and (c) where and how the Bureau of Prisons will provide such treatment.

(3) Unless otherwise ordered by the Court, the aforementioned evaluation shall be completed and a written report submitted to the Court and to counsel <u>no later than May 17, 2021</u>.

 **IT IS FURTHER ORDERED** that the parties appear before the Court for a Status Conference on <u>May 19, 2021 at 10:00 a.m.</u>

 **IT IS SO ORDERED.**

Dated:  April 27, 2021

               s/Gershwin A. Drain
               HON. GERSHWIN A. DRAIN
               United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 27, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager